UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 3, | Case No. 2:15-CV-1851 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| RED LIZARD PRODUCTIONS, LLC, | |
| Defendant(s). | |

Presently before the court is defendant Treasures Landscape Maintenance Association's (the "HOA") motion to dismiss. (ECF No. 23). Plaintiff Christina Trust, a division of Wilmington Savings Fund Society, FSB ("Christina Trust") filed a response (ECF No. 25), to which the HOA replied (ECF No. 26).

Also before the court is the HOA's motion to dismiss defendants Red Lizard Productions, LLC ("Red Lizard") and RLP-Shasta Daisy, LLC's ("RLP-Shasta") crossclaims. (ECF No. 41). Defendants Red Lizard and RLP-Shasta filed a response (ECF No. 42), to which the HOA replied (ECF No. 43).

Also before the court is plaintiff's first motion for summary judgment. (ECF No. 45). The HOA filed a response (ECF No. 48), as did Red Lizard and RLP-Shasta (ECF No. 52). Thereafter, plaintiff filed a reply. (ECF No. 56).

Also before the court is the HOA's motion for summary judgment against plaintiff. (ECF No. 57). Plaintiff filed a response, (ECF No. 64), to which the HOA replied (ECF No. 66).

Also before the court is the HOA's motion for summary judgment against defendant Red Lizard. (ECF No. 58). Red Lizard has not filed a response, and the time for doing so has since passed.

Also before the court is plaintiff's second motion for summary judgment. (ECF No. 59). The HOA filed a response (ECF No. 63), to which plaintiff replied (ECF No. 65).

**I.    Introduction**

This case involves a dispute over real property located at 5236 Shasta Daisy Street, North Las Vegas, Nevada, 89031 (the "property").

*1.  Plaintiff's interest in the property*

On June 14, 2007, Miguel A. Chavez purchased the property. (ECF No. 12). On the same day, Chavez executed and recorded a deed of trust identifying Countrywide Home Loans, Inc. as the lender, ReconTrust Company, N.A. as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS"), as nomine for lender and lenders successors and assigns. *Id.* The deed of trust secured a loan in the amount of $247,500.00. *Id*

On January 25, 2010, a corporate assignment of deed of trust was recorded, whereby MERS assigned all beneficial interest in the loan to BAC Home Loans Servicing, LP ("BAC Home Loans") f/k/a Countrywide Home Loan Servicing, LP. *Id.* On June 3, 2014, an assignment of deed of trust was recorded, whereby Bank of America, N.A. ("BANA"), successor by merger to BAC Home Loans, assigned all beneficial interest in the deed of trust to plaintiff in its individual capacity.[1] *Id.*

*2.  Defendants' interest in the property*

On November 26, 2008, a notice of delinquent assessment lien was recorded against the property by Nevada Association Services, Inc. ("NAS"), as agent for the HOA. *Id.* On January 22, 2009, a notice of default and election to sell under homeowners' association lien was recorded against the property by NAS on behalf of the HOA. *Id.* On March 12, 2010, a release of notice

---

[1] Plaintiff's complaint also references an assignment of the deed of trust to plaintiff in its capacity as trustee for the ARLP Trust 3. *See* (ECF No. 12).

**James C. Mahan**
**U.S. District Judge**

of delinquent lien was recorded against the property by NAS, on behalf of the HOA, in which the HOA gave notice that the first notice of lien was satisfied and released. *Id.*

Also on March 12, 2010, a notice of rescission was recorded against the property by NAS, on behalf of the HOA, pursuant to which the HOA rescinded the first notice of default. *Id.* On November 18, 2010, a second notice of delinquent assessment lien was recorded against the property by NAS, on behalf of the HOA. *Id.*

On May 13, 2011, Chavez filed for a voluntary petition under Chapter 7 of the Bankruptcy Code. *Id.* On August 16, 2011, a discharge of debtor was entered in the bankruptcy action. *Id.* Pursuant to this discharge, Chavez's pre-petition debt to the HOA was discharged. *Id.* The bankruptcy action was closed on November 22, 2011. *Id.*

On October 4, 2011, a second notice of default and election to sell was recorded against the property by NAS, on behalf of the HOA. *Id.* On May 15, 2012, a notice of foreclosure sale was recorded against the property by NAS, on behalf of the HOA. *Id.*

On May 30, 2012, BANA sent NAS a letter requesting a payoff ledger. (ECF No. 59). Neither the HOA nor NAS provided BANA with a payoff ledger. *Id.*

On December 14, 2012, a foreclosure sale took place whereby Red Lizard acquired the property for $4,758.00.[2] (ECF No. 12).

*3. Procedural history*

On September 25, 2015, plaintiff filed its original complaint in this action. (ECF No. 1). On January 31, 2017, plaintiff filed its first amended complaint. (ECF No. 12). The amended complaint alleges the following claims: (1) quiet title/declaratory relief pursuant to NRS 30.010 and NRS 40.010 against all defendants; (2) preliminary and permanent injunction against all defendants; (3) unjust enrichment against all defendants; (4) wrongful foreclosure against the HOA and NAS; (5) negligence against the HOA and NAS; (6) negligence per se against the HOA and NAS; (7) breach of contract against the HOA and NAS; (8) misrepresentation against the HOA

---

[2] At the time of the HOA sale, the amount owed on Chavez's loan exceeded $256,250.00. (ECF No. 12). Plaintiff alleges that, at the time of the HOA sale, the fair market value of the property exceeded $140,000.00. *Id.*

James C. Mahan
U.S. District Judge

and NAS; and (9) breach of the covenant of good faith and fair dealing against the HOA and NAS. *Id.*

On June 15, 2017, RLP-Shasta and Red Lizard filed crossclaims against Christiana Trust and counterclaims against the HOA, and NAS. (ECF No. 35). The crossclaims and counterclaims allege the following causes of action: (1) declaratory relief/quiet title pursuant to NRS 30.010 and 116.3116 against Christiana Trust, the HOA, and NAS; (2) preliminary and permanent injunction from foreclosure action against Christiana Trust, the HOA, and NAS; and (3) unjust enrichment against Christiana Trust, the HOA, and NAS. (ECF No. 35).

## II.     Legal Standard

### a.  Dismissal

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although rule 8 does not require detailed factual allegations, it does require more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id.* at 678–79.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*

at 678.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief."  *Id.* at 679.  When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The *Starr* court held:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### b.  Summary judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to

its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.    Discussion

*1.  Motion to dismiss Christina Trust's first amended complaint (ECF No. 23)*

     *a.  Quiet title/declaratory relief*

The HOA argues that plaintiff's claim for quiet title/declaratory relief should be dismissed because plaintiff's first amended complaint fails to allege, and cannot allege, it paid any debts owed on the property.  (ECF No. 23).

In response, plaintiff argues that it is not obligated to pay all debts owed on the property. (ECF No 25).  The court agrees.  Under Nevada law, to assert a claim for quiet title pursuant to NRS 40.010, plaintiff need only allege that it has an interest in the real property that is adverse to another.  Plaintiff does not need to have paid all debts on the property, as claimed by the HOA. *See* Nev. Rev. Stat. 40.010; *see also Lopez v. Bank of Am., N.A.*, no. 2:12-cv-00801-JCM, 2013 WL 1501449, at *3 (D. Nev. Apr. 10, 2013).

Next the HOA argues that plaintiff cannot prove good title in itself.  (ECF No. 23).  The HOA argues that because plaintiff did not foreclose on the property plaintiff cannot hold title to the property.  *Id.*  Plaintiff responds that it is not asserting an ownership or possessory interest in the property as the HOA contends, but instead asks the court to hold that either its first deed of trust still encumbers the property, or that the foreclosure sale was invalid.  (ECF No. 25).

"The purpose of a quiet title action is to establish one's title against adverse claims to real property *or any interest therein*."  *Holmes v. Countrywide Home Loans*, 2:12-cv-02013-JCM-CWH, 2013 WL 1787182, at *3 (D. Nev. Apr. 25, 2013) (emphasis added).  A plaintiff does not have to assert an ownership interest in property in order to assert a claim for quiet title.  *See id.* Therefore, plaintiff's claim for quiet title does not hinge on its ability to show good and clear title. *See id.*

Lastly, the HOA contends that because it does not claim a present interest in the property adverse to plaintiff's interest, there is no case or controversy between the parties.  (ECF No. 23). Thus, plaintiff's quiet title/declaratory relief asserted against the HOA should fail.  *Id.*  In response, plaintiff argues that the HOA is a proper party to the quiet title claim, as a decision by the court

holding the foreclosure sale invalid directly affects the HOA's right and obligations. (ECF No. 25).

Under rule 19(a), a party must be joined as a "required" party in two circumstances: (1) when "the court cannot accord complete relief among existing parties" in that party's absence, or (2) when the absent party "claims an interest relating to the subject of the action" and resolving the action without that party may, practically, "impair or impede the person's ability to protect the interest," or may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

This court has reasoned that parties facing a quiet title claim are necessary parties when the court's potential invalidation of the foreclosure sale could alter their possible liability to other entities in the case. *See Nationstar Mortg., LLC v. Maplewood Springs Homeowners Ass'n*, No. 2:15-CV-1683-JCM-CWH, 2017 WL 843177, at *6 (D. Nev. Mar. 1, 2017); *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (considering the desire to avoid redundant litigation and specifying rule 19(a)(1)'s focus on allowing "meaningful relief"). Therefore, the HOA is, at this point in the present litigation, a necessary party.

In light of the foregoing, the HOA has failed to demonstrate that dismissal of plaintiff's quiet title/declaratory relief claim is proper. Accordingly, the HOA's motion to dismiss plaintiff's quiet title/declaratory relief claim will be denied.

### b. Preliminary and Permanent Injunction

Claim (2) of plaintiff's complaint will be dismissed without prejudice as the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

       *c.*  *Wrongful foreclosure; unjust enrichment; negligence; negligence per se; breach of contract; misrepresentation; and breach of the covenant of good faith and fair dealing claims*

The court will dismiss, without prejudice, the remaining eight claims of plaintiff's amended complaint (ECF No. 12) for plaintiff's failure to mediate pursuant to NRS 38.310. *See, e.g.*, Nev. Rev. Stat. § 38.310(1); *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555 (Nev. 2013). Subsection (1) of NRS 38.310 provides, in relevant part, as follows:

> No civil action based upon a claim relating to [t]he interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property . . . or [t]he procedures used for increasing, decreasing or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to mediation.

Nev. Rev. Stat. § 38.310(1). Subsection (2) continues by stating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1." Nev. Rev. Stat. § 38.310(2). A "civil action" includes any actions for monetary damages or equitable relief. *See* Nev. Rev. Stat. § 38.300(3).

"A wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P.*, 310 P.3d at 559 (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 623 (Nev. 1983)). "The material issue in a wrongful foreclosure claim is whether 'the trustor was in default when the power of sale was exercised.'" *Turbay v. Bank of Am., N.A.*, No. 2:12-CV-1367-JCM-PAL; 2013 WL 1145212, at *4 (quoting *Collins*, 662 P.2d at 623). "Deciding a wrongful foreclosure claim against a homeowners' association involves interpreting covenants, conditions or restrictions applicable to residential property." *McKnight Family, L.L.P.*, 310 P.3d at 559. "This type of interpretation falls under NRS 38.310." *Id.* Additionally, NRS 38.310 applies to laws "contain[ing] conditions and restrictions applicable to residential property." *Id.* at 558.

"[U]njust enrichment is an equitable remedy." *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1093 (9th Cir. 2003). A claim for unjust enrichment qualifies as a "civil action" under NRS 38.300(3) "because it exists separate from the title to land." *McKnight Family, L.L.P.*, 310 P.3d at 559.

Similarly, plaintiff's claims for negligence, negligence *per se*, breach of contract, misrepresentation, and breach of the covenant of good faith and fair dealing all involve interpreting terms set forth in the CC&Rs applicable to the property and are thus civil claims as defined in NRS 38.300. In particular, the negligence and negligence *per se* claims allege NRS violations, which require an interpretation of the regulations and statutes that contained conditions and restrictions applicable to the property so as to fall within the scope of NRS 38.310. plaintiff's claims for breach of contract, misrepresentation, and breach of the covenant of good faith and fair dealing are based on alleged violations of obligations set forth in the CC&Rs and the terms and statements therein.

Consequently, plaintiff must first submit these claims to mediation before proceeding with a civil action. *See e.g.*, *U.S. Bank, N.A. v. Woodchase Condo. Homeowners Ass'n*, No. 215CV01153APGGWF, 2016 WL 1734085, at \*2 (D. Nev. May 2, 2016); *Saticoy Bay, LLC Series 1702 Empire Mine v. Fed. Nat'l Mortg. Ass'n*, No. 214-cv-01975-KJD-NJK, 2015 WL 5709484, at \*4 (D. Nev. Sept. 29, 2015).

2. *Motion to dismiss RLP-Shasta and Red Lizard's crossclaim (ECF No. 41)*

a. *Declaratory relief/quiet title*

The HOA argues that because it is not alleging an adverse claim to the property, it is not a proper party to RLP-Shasta and Red Lizard's declaratory relief/quiet title claim. (ECF No. 41). The court disagrees.[3]

Here, the HOA is a necessary party to this action based on the current allegations and relief sought. If the foreclosure sale is invalidated or set aside, the HOA's superpriority lien might be reinstated as an encumbrance against the property. *See, e.g.*, *U.S. Bank, N.A. v. Ascente Homeowners Ass'n*, No. 2:15-cv-00302-JAD-VCF, 2015 WL 8780157, at \*2 (D. Nev. Dec. 15, 2015). "The disposition of this action in the HOA's absence may impair or impede its ability to protect its interests." *U.S. Bank, N.A.*, 2015 WL 8780157, at \*2. In particular, if plaintiff "succeeds in invalidating the sale without the HOA being a party to this suit, separate litigation to

_____

[3] The court discussed the standard for determining necessary parties under Rule 19 in Section III, subsection 1.a, *supra*.

**James C. Mahan**
**U.S. District Judge**

further settle the priority of the parties' respective liens and rights may be necessary." *Id*. Thus, if the HOA is not a party, plaintiff, as well as RLP-Shasta and Red Lizard, would not be able to secure the complete relief sought. *See id.*; *see also* Fed. R. Civ. P. 19(a). As stated above, the HOA will remain a party to this litigation. Accordingly, the HOA's motion to dismiss RLP-Shasta and Red Lizard's quiet title claim will be denied.

### b. Preliminary and permanent injunction

Claim (2) of RLP-Shasta and Red Lizard's crossclaim will be dismissed without prejudice as the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

### c. Unjust enrichment

The court will dismiss, without prejudice, RLP-Shasta and Red Lizard's crossclaim for unjust enrichment due to their failure to mediate pursuant to NRS 38.310. *See, e.g.*, Nev. Rev. Stat. § 38.310(1); *McKnight Family, L.L.P.*, 310 P.3d at 555. RLP-Shasta and Red Lizard must first submit this claim to mediation before proceeding with a civil action. *See e.g.*, *U.S. Bank, N.A. v. Woodchase Condo. Homeowners Ass'n*, No. 215CV01153APGGWF, 2016 WL 1734085, at *2 (D. Nev. May 2, 2016); *Saticoy Bay, LLC Series 1702 Empire Mine v. Fed. Nat'l Mortg. Ass'n*, No. 214-cv-01975-KJD-NJK, 2015 WL 5709484, at *4 (D. Nev. Sept. 29, 2015).

### 3. Christiana Trust's motions for summary judgment

As the court will dismiss all of plaintiff's claims except for plaintiff's claim for quiet title, the court will limit its discussion of plaintiff's motions for summary judgment to plaintiff's claim for quiet title.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require

any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for a party to succeed on a quiet title claim, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[4] gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id*. at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

---

[4] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
(b) The elapsing of the 90 days; and
(c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[5]  "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*").  Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals.  *See id.* at 1112.

Here, the parties have provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of trustee's sale, and the foreclosure deed upon sale.  *See* (ECF No. 59-8, 59-11, 59-13, 59-15). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure.  *See id*. at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure.").   Therefore, pursuant to NRS 116.31166 and the recorded

---

[5]  The statute further provides as follows:

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle defendants to success on the parties' quiet title claims. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

Plaintiff raises the following grounds in support of its motions for summary judgment: (1) the constitutionality of NRS 116.3116 and the Ninth Circuit decision in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"); (2) rejected tender; (3) inadequate notice; (4) recordation of the notice of default during the borrower's bankruptcy voids the HOA foreclosure sale as a matter of law; (5) "the foreclosure deed recitals do not establish the HOA foreclosed on the super priority lien;" (6) commercial reasonability under *Shadow Wood*; and (7) the CC&R provisions "preclude the extinguishment of the first deed of trust." (ECF Nos. 45, 59). As set forth in further detail below, the court finds that plaintiff has failed to demonstrate it is entitled to summary judgment.

### 1. Due process

Plaintiff's first motion for summary judgment argues that NRS Chapter 116 is unconstitutional under *Bourne Valley*, wherein the Ninth Circuit held that the HOA foreclosure statute is facially unconstitutional. (ECF No. 45). Plaintiff further contends that *Bourne Valley* renders any factual issues concerning actual notice irrelevant. *Id.* at 7.

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne*

*Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). BOA has failed on both prongs.

Here, plaintiff has failed to show that it did not receive proper notice. The fact that plaintiff contacted NAS regarding the pending foreclosure sale demonstrates that BOA had notice of the sale. Therefore, plaintiff's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Further, plaintiff confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Accordingly, plaintiff has failed to show that summary judgment is proper based on *Bourne Valley*.

### 2. Tender

Plaintiff contends that the deed of trust still encumbers the property because the HOA/NAS wrongfully rejected BANA's tender of the superpriority amount. (ECF No. 59). The court disagrees, as BANA did not tender an amount sufficient to extinguish the HOA's superpriority lien.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162."); *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016) ("*SFR* characterized the superpriorty piece as including 'the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges.'").

Here, BANA presumed that the amount set forth in the notice of default included more than the superpriority lien portion and that a lesser amount be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

After failing to use the legal remedies available to plaintiff and its predecessors in interest to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—plaintiff now seeks to profit from it and its predecessor's failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the

equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Accordingly, plaintiff's argument regarding tender does not entitle it to judgment as a matter of law.

### 3. *Inadequate notice*

Plaintiff argues that the notices in this case was statutorily inadequate because they included additional fees and costs beyond the superpriority amount as defined by NRS 116.3116. (ECF No. 59). This argument was considered and rejected by the court in *SFR Investments*:

> U.S. Bank further complains about the content of the notice it received. It argues that due process requires specific notice indicating the amount of the superpriority piece of the lien and explaining how the beneficiary of the first deed of trust can prevent the superpriority foreclosure sale. But it appears from the record that specific lien amounts were stated in the notices, ranging from $1,149.24 when the notice of delinquency was recorded to $4,542.06 when the notice of sale was sent. The notices went to the homeowner and other junior lienholders, not just U.S. Bank, so it was appropriate to state the total amount of the lien. As U.S. Bank argues elsewhere, dues will typically comprise most, perhaps even all, of the HOA lien. *See supra* note 3. And from what little the record contains, nothing appears to have stopped U.S. Bank from determining the precise superpriority amount in advance of the sale or paying the entire amount and requesting a refund of the balance. *Cf. In re Medaglia*, 52 F.3d 451, 455 (2d Cir.1995) ("[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right.").

334 P.3d at 418. Accordingly, the court holds that the notices in this case did not render the foreclosure sale statutorily defective.

### 4. *Chavez's bankruptcy*

Plaintiff also argues that the association recorded its second notice of foreclosure sale in violation of the automatic stay resulting from Chavez's bankruptcy. (ECF No. 59). Chavez is not

a party to this action, and plaintiff does not demonstrate that it has standing to raise arguments on behalf of Chavez. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (holding that in order to invoke third-party standing a plaintiff must demonstrate that the party asserting the right has a "close" relationship with the person who possesses the right and that there is a "hindrance" to the possessor's ability to assert his own interests.").

### 5. *Whether the HOA foreclosed on the super priority lien*

Plaintiff argues that the foreclosure deed did not contain sufficient recitals to establish that the HOA sale foreclosed upon the superpriority interest of the lien. (ECF No. 59). Here, the foreclosure deed referenced the notice of delinquent assessment lien, which contained a superpriority portion. (ECF No. 59-15). Therefore, the HOA foreclosed upon its superpriority interest.

### 6. *Commercial reasonability*

Plaintiff argues that the foreclosure sale was commercially unreasonable because the property sold at approximately 4% of its fair market value,[6] which is grossly inadequate so as to justify setting the foreclosure aside. (ECF No. 59).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[7]

---

[6] Here, the foreclosure sale price was $4,748 and the fair market value as estimated by plaintiff's expert was $117,000. (ECF No. 59).

[7] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

The *Shadow Wood* court did not adopt the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be

standard and concluding that "the UCIOA does provide for this additional layer of protection").

commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Here, plaintiff fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. Plaintiff relies on its assertion that BANA tendered the superpriority amount to show fraud, unfairness, or oppression. *See* (ECF No. 59). However, as the discussed in the previous section, the amount due was set forth in the notice of default. Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BANA sent the HOA trustee a letter requesting a payoff ledger. This is insufficient to satisfy the requirements for sufficient tender. Plaintiff's alternative arguments regarding commercial reasonability mimic arguments made elsewhere in its brief. *See* (ECF No. 59 at 20-21). The court need not re-address[8] each argument here, for none of them demonstrate fraud, unfairness, or oppression.

Accordingly, plaintiff's commercial reasonability argument fails as a matter of law as it has not set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### 7.  *The CC&Rs*

Plaintiff cites the CC&Rs mortgage protection clause as evidence that plaintiff's deed of trust survived foreclosure. (ECF No. 59). The Supreme Court of Nevada has explicitly rejected plaintiff's implied argument that a mortgage protection clause can supersede the statutory structure of NRS 116.3116. *See SFR Investments*, 334 P.3d at 418-19.

---

[8] The court considers plaintiff's arguments regarding the CC&Rs in the next section of this order.

Plaintiff also argues that the mortgage protection clause in the CC&Rs provides evidence of "unfairness" sufficient to set aside the foreclosure sale as commercially unreasonable. (ECF No. 59). This court has ruled that language in a mortgage protection clause purporting to subordinate a HOA lien to the first deed of trust does not, without more, constitute unfairness in the context of a HOA foreclosure. *See, e.g.*, *Bank of America, N.A. v. Hollow de Oro Homeowners Association*, --- F. Supp. 3d. ----, 2018 WL 523354 (D. Nev. Jan. 23, 2018).

    4. *The HOA's motions for summary judgment*

        a. *The HOA's motion for summary judgment against plaintiff*

The court holds that the foreclosure sale transferred title free and clear to defendant Red Lizard. Therefore, the HOA, Red Lizard, and RLP-Shasta are entitled to summary judgment against plaintiff on plaintiff's claim for quiet title. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (holding that when a plaintiff's claims fail as a matter of law on a motion for summary judgment, all defendants are entitled to a final judgment in their favor on these claims, regardless of whether they joined the motion).

        b. *The HOA's motion for summary judgment against Red Lizard*

In light of the foregoing, the court will deny the HOA's motion for summary judgment against Red Lizard as moot.

**IV.    Conclusion**

In light of the foregoing, the HOA's motion to dismiss plaintiff's first amended complaint will be granted as to plaintiff's claims for (1) preliminary and permanent injunction; (2) wrongful foreclosure; (3) unjust enrichment; (4) negligence; (5) negligence *per se*; (6) breach of contract; (7) misrepresentation; (8) and breach of the covenant of good faith and fair dealing. (ECF No. 23). The HOA's motion to dismiss plaintiff's quiet title/declaratory relief claim will be denied. *Id.*

Further, the HOA's motion to dismiss RLP-Shasta and Red Lizard's crossclaims will be granted without prejudice as to RLP-Shasta and Red Lizard's claims for (1) preliminary and permanent injunction and (2) unjust enrichment. (ECF No. 41). The HOA's motion will be denied as to RLP-Shasta and Red Lizard's claim for declaratory relief/quiet title. *Id.*

Furthermore, the HOA's motion for summary judgment against plaintiff will be granted. Therefore, the HOA, Red Lizard, and RLP-Shasta are entitled to judgment as a matter of law against plaintiff. The court will deny plaintiff's motions for summary judgment. The court will deny the HOA's motion for summary judgment against Red Lizard and RLP-Shasta as moot.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the HOA's motion to dismiss (ECF No. 23) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that the HOA's motion to dismiss RLP-Shasta and Red Lizard's crossclaims (ECF No. 41) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiff's first motion for summary judgment (ECF No. 45) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment against plaintiff (ECF No. 57) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment against Red Lizard (ECF No. 58) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that plaintiff's second motion for summary judgment (ECF No. 59) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA shall prepare and submit a proposed judgment consistent with the foregoing within thirty (30) days of the date of this order.

DATED May 24, 2018.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 22 -